IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMI VARUSKA, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND JURY** |
| | ) | **DEMAND** |
| FATHER FLANAGAN'S BOYS' | ) | |
| HOME, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through her attorneys, and for her causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff JAMI VARUSKA ("Varuska") is a resident of Omaha, Douglas County, Nebraska.

2. Defendant FATHER FLANAGAN'S BOYS' HOME ("FFBH") is a Nebraska corporation authorized to conduct business in Nebraska with its principal office located in Boystown, Douglas County, Nebraska.

3. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c). The acts about which Plaintiff complains occurred during the course of her employment in Nebraska.

4. This Court has subject matter jurisdiction over the claims arising under federal law pursuant to the provisions of 28 U.S.C. §1331, and pendent

1

supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367.

5.      On or about August 21, 2024, less than 90 days prior to the filing of this Complaint, Plaintiff received the Determination on her Charge No. 2-22/23-6-53506-RD by certified mail from the Nebraska Equal Opportunity Commission.

6.      On or about September 18, 2024, less than 90 days prior to the filing of this Complaint, a Notice of Right to Sue with respect to Plaintiff's Charge No. 32E-2023-00449 was issued by the U.S. Equal Opportunity Commission.

## FACTUAL BACKGROUND

7.      Plaintiff began working for Defendant on July 18, 2022, most recently as a Clinic Nurse.

8.      Plaintiff is a disabled female and at all times relevant to this action had one or more physical and/or mental impairments that substantially limited one more of her major life activities of lifting, sitting, standing and working, and the major bodily function of the musculoskeletal system.

9.      On August 10, 2022, Varuska requested reasonable ergonomic accommodations with FFBH due to her disability. FFBH denied her accommodation request but gave no reason for the denial.

10.     FFBH's denial of accommodation made the physical and mental symptoms of Varuska's disability worse, and Varuska complained about the same to Stephanie Adams, in FFBH's Employee Health Department.

11.     On October 18, 2022, Varuska requested a reasonable

accommodation of ergonomic modification of her workstation due to ongoing concerns related to her disability and the effects of the denial of her first accommodation request. This second accommodation request was denied, no reason was given and Varuska complained about the denial to Lisa Lever, FFBH's Clinic Supervisor.

12.    On November 15, 2022, Varuska notified FFBH again that her workstation ergonomics were making her disability worse. FFBH took no action to accommodate Varuska as requested and gave no explanation why.

13.    On or about December 7, 2022, Varuska was assaulted by a patient's daughter, an adult with special needs, injuring her left shoulder, left arm, neck, back and chest wall.

14.    On February 6, 2023, Varuska requested another ergonomic reasonable accommodation as Varuska was still having medical issues related to her disability from her first accommodation denial and she also had medical issues recovering from her recent work-related injury.

15.    On February 15, 2023, Varuska reported illegal activity to Privacy Officer Theresa Crum. Varuska reported that she had previously notified her supervisor, Lever, that FFBH was violating HIPPA regulations by directing employees to carry patient information in an unsecured manner from location to location. Lever acknowledged that it was a HIPPA violation, but she told Varuska "It's just the nature of the clinic."  Neither Lever nor FFBH changed the company

policy or operations to comply with HIPAA or did anything else to stop the illegal activity.

16.    On February 17, 2023, Varuska received a verbal warning from Lever regarding her job performance, patient care, and not receiving feedback in a constructive manner, which Varuska denied was true and alleged that it was retaliation for requesting accommodations and reporting illegal activity.

17.    On February 20, 2023, Lever pulled Varuska from her work assignment to review the warning. Varuska expressed concerns, contacted Nikki Green, Sr. HR Generalist, and requested supporting information about the verbal warning. Varuska also advised Green that she was told to "take short cuts" and "only collect medical history from the neck up" to speed up the patient intakes. When Varuska received that instruction, she protested because it was a violation of policy as well as below the patient standard of care. The warning further stated Varuska had unauthorized overtime "every week" which was not accurate.

18.    Varuska was subsequently advised by Green that the warning was "rescinded and amended." Varuska requested a copy of the updated warning twice and was denied twice.

19.    Beginning March 1, 2023, Varuska was out on medical leave for her workers' compensation injury. Varuska' s indemnity benefits were paid sporadically without explanation. When Varuska requested an explanation for the lack of indemnity payments from Derek Fiala in the FFBH HR Department, she

received no response.

20.    On March 31, 2023, Varuska followed up with FFBH to prepare to come back to work from medical leave. Varuska inquired about her initial disability accommodations again. Varuska was told they were approved this time.

21.    On April 20, 2023, Varuska was evaluated and was released to return to work with restrictions on how much weight she could lift and restrictions on how long she could sit and stand. Varuska shared her restrictions with FFBH.

22.    On April 25, 2023, Varuska was told by Fiala that FFBH would not have her return to work until they can make all accommodations take place first.

23.    On May 9, 2023, Fiala instructed Varuska that she was cleared to come back to work with all accommodations approved and in place.

24.    On May 10, 2023, Varuska returned to work and found upon arrival that the accommodations provided do not fit with her medical restrictions. Varuska notified her clinic supervisor of the issues.

25.    On May 11, 2023, Varuska notified Fiala that the accommodations did not meet her work restrictions and that Varuska was going to report this to the NEOC and FFBH's Compliance and Legal division due to concerns about returning to work and not being in compliance with FFBH's Disability Accommodation Policy. Varuska explained that due to her concerns about further exacerbating her injury and delaying her recovery, Varuska would wait to hear back from legal/compliance regarding her safe return to work.

26.     Varuska was off work until May 17, and was denied indemnity benefits so Varuska was required to use her vacation time during that time period.

27.     Varuska returned to work on May 17, 2023, when FFBH agreed to allow her to work a light duty position per the work restrictions given by her workers' compensation doctor.

28.     On June 13, 2023, Varuska filed her Charge of Discrimination with the EEOC and NEOC, alleging disability discrimination, retaliation, and whistleblower retaliation.

29.     Varuska subsequently took leave from her position with FFBH in order to have surgery for her workers' compensation injury. On February 20, 2024, Varuska notified FFBH that she was released back to work light duty following her surgery and would be able to do the light duty job she was assigned before surgery such as answering phone calls.

30.     On March 14, 2024, FFBH notified Varuska that they had no light duty work available for her and she had until March 22, 2024, to search for and obtain an alternate position at FFBH if she wanted to remain employed there. Varuska requested a list of open positions for which she was qualified for and asked FFBH's HR to clarify the physical requirements for a few nursing positions that had no physical requirements listed. FFBH clarified that the positions with no physical requirements had none, and otherwise offered no help to Varuska.

31.     On March 18, 2024, Varuska's counsel contacted FFBH's counsel

by phone and left a voicemail asking for a call back. Varuska's counsel also sent an email seeking a call back to discuss concerns that FFBH was not engaging in the interactive process with Varuska. The email requested that FFBH provide Varuska with reasonable accommodations under the ADA including (1) placing Varuska into an open position that she was qualified for per the EEOC's implementing regulations for ADA, and/or (2) allowing her to take the rest of her leave before firing her. The email also requested that the deadline for Varuska finding employment within FFBH be extended.

32.    On March 20, 2024, Varuska met with Fiala to discuss open positions. Varuska asked that FFBH identify the open positions she is qualified for and place her into an open position. In response, she was told to apply for as many positions as she could to determine what she was qualified for, and which positions would meet her restrictions.

33.    After the meeting with Fiala, Varuska logged into her "Workday" program and noticed that her performance review was downgraded to "does not meet expectations," but she had been on medical leave for her surgery. Varuska was concerned that when she applied for jobs that supervisors would see the review and not want her in their departments.

34.    On March 26, 2024, Varuska's counsel again attempted to contact FBBH's counsel by phone and left a request for return call on her voicemail. Varuska' counsel sent another email giving notice to FFBH that they were not

7

complying with ADA regulations by requiring Varuska to search for, apply for and compete for an open position she is qualified for rather than being placed in an open position she is qualified for as a reasonable accommodation. The email further alleged that FFBH was discriminating and retaliating against Varuska related to her disabilities and protected activities of reporting a work injury, reporting violations of HIPAA, and filing an EEOC/NECO charge of discrimination. Specifically, Varuska's performance reviews in "Workday" had been changed to "does not meet expectations" even though she had been out on leave and how that change would reflect negatively when applying for other positions. Varuska's counsel again requested that she be placed in an open position she is qualified for and that she be able to use her FMLA and paid leave as an accommodation before her employment was terminated.

35.    On March 27, 2024, Varuska was notified that FFBH would not terminate Varuska's employment since she was actively searching for alternate positions. However, FFBH refused to place Varuska in an open position that she was qualified for and she continued to apply for and compete with non-disabled employees and non-employees for open positions.

36.    Varuska was terminated on September 5, 2024.

37.    Prior to her termination, Plaintiff's job performance was satisfactory.

38.    At the time of her termination, Plaintiff was earning approximately

$1,376.15 weekly working full time hours for Defendant. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $34,000.00 and are continuing. As part of her compensation, if moved to another position, Plaintiff would have been eligible for paid time off, health, dental, and vision insurance, 401K retirement contributions, and life insurance in amount that is currently unknown to Plaintiff and will be subject to further discovery.

39.     As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I

## DISABILITY DISCRIMINATION

### Neb. Rev. Stat. §48-1104 ("NEFEPA")

40.     Plaintiff hereby incorporates paragraphs 1 through 39 as if fully set forth herein and states:

41.     Defendant is and was at all times material an "employer" within the meaning of under Neb. Rev. Stat. §48-1102.

42.     Plaintiff is and was disabled within the meaning of the NEFEPA.

43.     Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

44.     Plaintiff was qualified to perform the essential functions of the job, with or without accommodation.

45.     At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities or major bodily functions.

46.     Defendant discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to denying her work hours, termination of her employment and failing to re-hire her in another position.

47.     Defendant failed to accommodate Plaintiff's disability, including but not limited to refusing to modify her workstation or place her in an open position that she was qualified for in violation of the NEFEPA.

48.     Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the NEFEPA.

49.     Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

50.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

**COUNT II**

**DISABILITY DISCRIMINATION**

**42 U.S.C. §§12101 et seq. ("ADA")**

51. Plaintiff hereby incorporates paragraphs 1 through 50 as if fully set forth herein and states:

52. Defendant is and was at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

53. Plaintiff is and was disabled within the meaning of the ADA, as amended.

54. Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

55. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of his major life activities or major bodily functions.

56. At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

57. Defendant discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to denying work hours, termination of her employment and failing to re-hire her in another position.

58. Defendant failed to accommodate Plaintiff's disability, including

11

but not limited to denying workstation modifications, refusing to place her in an open position that she was qualified for in violation of the ADA.

59. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

60. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

61. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant are subject to punitive damages.

62. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNTS III and IV

## RETALIATION

### 42 U.S.C. §12203; Neb. Rev. Stat. §48-1114(1)(a) and (c)

63. Plaintiff hereby incorporates paragraphs 1 through 62 as if fully set forth herein and states:

64. During her employment, Plaintiff engaged in protected activity, including but not limited to exercising her rights under the ADA and NEFEPA by making a request for disability accommodation, internally complaining of disability

discrimination, and filing a Charge of Discrimination with the EEOC and NEOC.

65.     During her employment, Plaintiff engaged in protected activity, including but not limited internally opposing violations of HIPAA.

66.     Defendant took adverse employment action against Plaintiff, including but not limited to subjecting her to discipline, denying her work hours and termination of her employment.

67.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against her.

68.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

69.     As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.


**COUNT V**

**WRONGFUL TERMINATION IN VIOLATION**

**OF NEBRASKA PUBLIC POLICY**

70.     Plaintiff hereby incorporates by reference paragraphs 1 through 69 and states:

71.     During her employment, Plaintiff participated in one or more protected activities arising under Nebraska Workers' Compensation statutes, including but not limited to making a claim for workers' compensation benefits payable by Defendant and internally opposing violations of HIPAA.

72.     Defendant disciplined, denied work hours, and terminated Plaintiff's employment.

73.     A causal link existed between Plaintiff's termination and her participation in protected activities under Nebraska Workers' Compensation statutes and HIPAA.

74.     As a result of Defendant's retaliation in violation of public policy, Plaintiff has suffered damages in the form of lost wages and benefits, loss of future pay and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. Plaintiff has incurred and will continue to incur attorney fees and costs in this matter.

## DAMAGES

75.     Plaintiff hereby incorporates by reference paragraphs 1 through 74 and states:

76.     As a result of Defendant's discrimination, retaliation and other wrongful conduct, Plaintiff has suffered damages and seeks the following relief:

    a.  Back pay and lost benefits to the time of trial;

    b.  Front pay including retirement and other benefits;

14

   c.   Federal and state income tax gross up to offset increased tax liability for lost wage award;

   d.   Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

   e.   Punitive damages under Federal law;

   f.   Attorney's fees, expert witness fees and other reasonable costs; and,

   g.   Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special, and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: November 19, 2024.

JAMI VARUSKA, Plaintiff

BY:   s/Jennifer Turco Meyer
       Jennifer Turco Meyer, #23760
       Of Dyer Law, P.C., LLO
       2611 S. 117th Street
       Omaha, Nebraska 68144
       (402) 393-7529
       (402) 391-2289 facsimile
       Jennifer@dyerlaw.com
       Attorney for Plaintiff